Good morning, Your Honors. If it please the Court, I am Wally Mason. I am counsel for the appellant Sandra Hernandez-Andrade. I'd like to reserve five minutes for rebuttal. At its heart, this case is a case about due process. The U.S. Supreme Court has held that due process requires that an alien be provided notice of removal proceedings and an opportunity to be heard in those proceedings. Were your due process claims about the lack of notice raised to the BIA? And if so, where in the record is that? Yes. I'm saying this in that this is the underlying issue of the regulations that we're focused on in this are based on due process concerns. And this case, it's very fact-specific, looking at whether notice was properly sent and properly received and whether my client properly rebutted the presumption of delivery. The underlying purpose of those regulations are to carry out the due process rights of the alien who finds himself in removal proceedings. In this sense, that's why I say that this is a case about due process. But you don't have a specific due process claim that you're trying to raise or that was raised before the BIA. Is that correct? Not explicitly. Again, in saying that the rules were not followed and that the affidavit of rebuttal of delivery was not honored by the immigration judge, that in essence, my client has been denied her due process rights. But again, what gives us jurisdiction and also what is the gravamen of your claim? Because even if you are alleging a due process violation because there was no notice, we have already said there's no liberty interest at stake in a motion to reopen in our Hernandez-Castillo case. So I'm trying to figure out what is the basis for relief here and also whether or not we have jurisdiction. Yes, Your Honor. Again, the regulations, the facts that we were focusing on all go to due process and the right of the alien to be heard in a court of law and immigration proceedings. That is what has been violated here. And that her interest was that, again, in Landa V. Plasencia, 1982, the US Supreme Court held that there's a fundamental due process right of an alien to have an opportunity to be heard. And again, of course, if there is no notice of the day of that court hearing, then there has been no opportunity to be heard. I'd like to note that the Immigration and Nationality Act draws a distinction between the government's obligation to properly send a notice of a hearing, which that notice can later be used as the basis for entry of an in absentia order when the person does not appear in court. And then also there is a separate section about the alien's receipt of it, the rebuttable presumption that is created when a court properly mails a notice, which can be fully satisfied, yet still the notice may not be received by the person. And then there is a focus on that. And that is where my client exercised her rights to file a motion to reopen. But the immigration court evaluated that and determined, I've got this and I've got that, and I believe that she received. And isn't that a factual determination, which we don't have jurisdiction to hear? Well, I would say there that the immigration judge and the BIA were not following the standard that was articulated in matter of MRA by the BIA, which has also been articulated by this court in Magnolia G.V. Gonzales, Fifth Circuit, 2005. This court did recognize there was the lessened presumption of delivery, given that it was not certified mail. Exactly, Your Honor. That is our point, that we recognize. You're saying that the BIA and IJ didn't recognize that difference? Well, I'm saying that they gave no weight whatsoever, really, to her affidavit in which she said, I did not receive the notice. And yes, there is a lot. Well, the IJ found it not credible. And in any of these cases, you have to discern. It's an affidavit. Someone says they didn't get it. It all comes down to credibility. Yes, it all comes down to credibility. Why isn't that a factual credibility determination? I would say that the judge abused her discretion and that she did not look at other issues that would have showed that it was a credible affidavit. In this, again, the facts were that my client had provided a correct address when she was intercepted at the border. Entering, she gave a correct address in California where she was going to live. Doesn't it hurt your client and support the immigration judge's ruling that your client didn't, that form you're talking about says if you ever have a change of address, you need to notify us. And I understand she changed her address only after this supposed mailing. But with the question being, is she telling the truth that she really didn't get this mailing? Or is she just trying to avoid the very serious immigration consequences of the situation she's now in? Isn't it relevant that she did not change the address as she was required to do, which indicates she was just trying to avoid being part of the immigration court process? Well, Your Honor, I would say in looking at the timeline, her failure to later subsequently not do a change of address is a bit of a red herring here. If we look at the focus of when she was supposedly to receive the notice and when the in absentia order was issued, at that time she had provided a full address and a phone number. I get that. But doesn't it, even though it's after this mailing, I understand that. At this time of this mailing, she was still at the address she gave when she was apprehended at the border. But doesn't it show that she wasn't trying to be part of the immigration court process? Because if she was, she would have said, oh, I'm moving. They haven't sent me this letter yet. They were supposed to. I better let them know where I am, because I really want to go to immigration court and stand up for myself. Well, I will say in the affidavit that she submitted with the motion to reopen, she does comment there about her lack of knowledge of that obligation. But also I'd say that she got the original notice when she was first stopped by the Border Patrol agent? No, Your Honor. She did receive a notice to appear. But of course, it did not give a time and date and place of the hearing to be held. Certainly she, I assume you would agree, at that point she's on notice that she's going to have a hearing. Yes, Your Honor, or some procedure. She did say also in her affidavit that due to her lack of knowledge of how things are done, that she thought somehow that she was OK, that they had admitted her, she stopped, she was interviewed by immigration officers, and that she did not know what the process was going to be. The court could say, well, really, she's just hoping to stay under the radar. And that's their prerogative. And then if they make a determination, we have this, and we have this, and we believe this, then we don't have any jurisdiction even here to reopen the institution. Again, to go back, I would say that at the time that the in absentia order that took place, that was not that long after she had entered the country when the notice of the hearing date came and also the in absentia order. And that the immigration judge, in looking at the motion to reopen, I suppose gave much more weight to the subsequent failure to file a change of address than her actions when she came in, when she said that she had US citizen relatives. She gave a number of a US citizen sister who could possibly have assisted her in seeking relief in this country. She said she was fleeing violence in Honduras. She would have had another application for relief there of asylum. All of these things put together, and then look on the timeline of when the notice supposedly came and the in absentia order was entered. They followed shortly after she had given all this information. What does the record reflect regarding the asylum? There was no application for asylum ever filed. What is your best case under our precedent that we can give you any relief here today? I believe that you could remand this case back. I'd like the case to go back before. The case says we can do that. I believe that you could hold that the BIA, I don't have at my fingertips a site to give you, but that the BIA erred in affirming the judge's denial of the motion to reopen, and that the judge did not give proper weight to her affidavit, which case law says can and should be considered a rebuttal of the presumption of delivery. And I just would like to comment about the rebuttal of delivery, how I'm sure you're all aware that before early 1990s, when these notices were sent by certified mail, return receipt requested, that often when a judge would open the file and get ready to have a hearing, they'd say, oh, I see this has come back as undeliverable. That actually was raised a few times in the briefs at the BIA and before this court by the government, to say that the fact that the notice never came back as undeliverable was further evidence that she received it. But that is not the standard. That is not the law now. Since 1992, when the court started using just plain US mail, put a stamp on it and you can send it, since they've been using that method to deliver these important notices, that's why the presumption of delivery is much weaker. And I would say that the immigration judge erred in also basically alluding back to the earlier law and saying, well, there's nothing here that shows the notice was undeliverable and that she did not give proper weight. It may be a weaker presumption, but there's obviously still a presumption. Is there any evidence of good faith on your client's part, a good faith effort to show up, to find out when the hearing was, to comply with the law, given that you admit she knew that the immigration authorities wanted to hold her and to deport her? Yes. Well, she understood that the documents that she was given is that immigration was saying you can go into the country, but there's going to be some other process to follow. She did not know what that process is. And she says in her affidavit, I mean, of course, it was wishful thinking. But she was thought, well, I gave him my number. I gave him my address. I haven't heard anything. Maybe this is how it works. And I will say also that later, it was how she handled the original notice. What I'm saying is after that, was there any evidence of a good faith effort? No, she did not learn of the in absentia order to some years later when she filed a Freedom of Information Act request. And that's how she become aware of it. She then immediately, she hired an attorney. And they are the ones that filed the motion to reopen. It was not my firm, but another counsel. And so she was very diligent. Once she did learn of the order, be it some years later, she was very diligent in her efforts to then seek to reopen her case. Nothing prior to that? No, Your Honor, not prior to the discovery under the four-year request. Do you have anything further? Your Honor, I would like to note when I say that there are, in these cases, they're always somewhat fact-specific. I know there was a recent case this year in Nunez, which opposing counsel submitted notice to the court of in a letter. That case also, where denial of a motion to reopen was upheld by your court. Again, there, that concerned a case where the person had moved and failed to give a notice of a new address. And then the notice was actually sent out to the old address. So I would argue here that, looking at the facts of this case, in this situation, at the time the notice was mailed, it was mailed to her correct address, which she had provided. It was an apartment unit. It was in a large apartment complex with communal, centrally located mailboxes. So there were many, that's why, too, in our brief and even in her original declaration, I think she speculates somewhat of the many things that could have happened to it when there's a communal mailbox situation like that, that it was misdelivered, that it was put in the wrong mailbox. Your Honor, I'd actually brought some visual aids today to share. But since they went in the record below, the clerk had informed me we couldn't admit them. But I do have them here of the actual mailboxes. The situation was that they're located outside. They're subject to the elements. If someone came there and say, as happens in apartment complex, if someone got them notice and it was not their notice, if they set it on top or whatever, it would have been out exposed to the wind, the rain. Also, it was on a busy street where there are many people walking by, many strangers walking by. So our point was that look. Did she know about these conditions at the time? Pardon? Did she know about these problems with mail delivery? I assume after she moved there, she saw what the mail delivery situation was. But that was the official address. It was the address where her sister, the US citizen, was living. Does that cut against your position? In other words, she knows that mail delivery is a problem. She knows that she's supposed to be getting mail. Doesn't that kind of put even more of an onus on her to check? But I would say still, she did provide the correct address. And also, she had some thought that having provided the phone number, that also she might get a phone call. Because when she was with the Border Patrol, they actually called her sister and talked to her on the phone. And so she also had a second level of feeling that. Also, I would note that the original NTA and the documents of processing at the border, it asked for the phone number. And so also providing the address and the phone number, it was another way that perhaps she felt that she had given enough information and that it would be secure that she would receive some type of notice by mail or by phone call about her case. Are you aware of a recent case that says that the workings of a household don't, you can't benefit from that if you're the person? And what you're telling, what this argument is, is that the mail made it from the postal service to the actual mailbox area, but that someone picked it up or some third party are stealing it or whatever. That doesn't, our case law would not seem to favor that argument. Yes, Your Honor. I am familiar with that recent case. And I would say that this case is not the same in that there you're talking about the household, the inner workings of the household. Perhaps one person got it and didn't give it to another within the household. Here we're talking about a public mailbox that covers an apartment complex. And she cannot be responsible for if the mail carrier did not get it into the correct box. I would say that that's, I would distinguish that from it actually. I'm not interested that somebody would take it out of the box. Well, no, I was saying it's a bank of mailboxes, as you see, in large apartment complexes. I know personally, too, Polly, the mail carrier comes and opens with a master key, exposes all the boxes, and puts the mail in the respective units, closes it up. What I was saying is that one of the speculations she had offered is that if it was misdirected to another unit within that complex, she lived in apartment six. If it went to another unit, that perhaps that person, an unknown person. But the district court, I mean, not the district court, the immigration judge and the BIA did not have advantage of these exhibits and that sort of thing to consider this argument, did it? Not at that time. OK, thank you. Thank you. You saved time for rebuttal. Thank you. Good morning, Your Honors. Patricia Bruckner on behalf of the Attorney General. The board's denial of the motion to reopen and rescind the in absentia order was not an abuse of discretion. Ms. Hernandez did not submit sufficient evidence indicating that she rebutted the presumption of delivery for the regular mailing of the notice of hearing that the immigration court sent to the address she provided. Now, I don't think that you've, you don't have any jurisdictional argument in this case, do you? You believe we have jurisdiction to hear this case? You didn't brief anything about jurisdiction, is that right? We did, Your Honor. We do. We believe we, the court does not have jurisdiction over the due process claims that. Otherwise, you think we have jurisdiction over whether the, about the receipt of the mail and whether or not the argument on that, the factual argument on that? That's correct, Your Honor. The court found jurisdiction in similar failure of the inner workings of household cases like Nunez and Ojeda Calderon. But to the extent that she makes it a due process argument, we're saying there is no jurisdiction because she didn't exhaust her due process argument before the agency. And also, even if she had, of course, as Your Honor mentioned, there's no liberty interest in reopening. So there would, her due process claim would fail, even if the court had jurisdiction to consider it. It would also fail if we upheld the determination that she was mailed the notice, because then she got full process. That's correct. On a factual basis, it would fail as well. So I'm just concerned that under Penalva, we may not have jurisdiction on the factual issue. Because in that case, the determination of whether she acted diligently, and we were trying to do a fact-intensive determination, and they determined she wasn't diligent, and we said that there was no jurisdiction to consider that, because that's a factual determination. But I guess that that's not before us. And so please proceed with your argument that you have. Thank you, Your Honor. It's my understanding that the factual determinations are reviewed for substantial evidence, and whether Ms. Hernandez received notice at the address she provided should be reviewed for substantial evidence, based on my reading of the case law. So there's no evidence that she rebutted this presumption of delivery. Importantly, in her declaration, she admitted that she was living at the residence that she provided to the Border Patrol at the time that she was apprehended. The notice was not returned as undeliverable, which is evidence of receipt. This makes our case stronger than Nunez, where the notice of hearing was returned as undeliverable, with a note that Nunez doesn't live at the residence. So we argue we have a stronger case than in Nunez. She did submit an affidavit, but the board found it did not overcome the presumption of delivery. Importantly, and I disagree with opposing counsel on this, I think the board carefully followed the factors in MRA, the board precedent. They looked for other evidence besides the affidavit, and there was nothing. She admitted to being personally served with the notice to appear. She admitted on the certificate of the NTA that she was advised in Spanish of the consequences for failure to appear. She was not diligent under the MRA factors. She waited more than 11 years after she got that NTA and that notification to file her motion to reopen. And it was only after she had married a US citizen and believed that she had relief available to her. So actually, another MRA factor is affidavits from other people. She did not submit an affidavit from her sister who lived at the residence, or any neighbors, or the postal service, or any evidence on how the mail is distributed at the condominium where she was living. Even if, also as your honor noted, after she moved, she didn't file a change of address form with the immigration court. So this is after the order was sent to her, and this is evidence that she intended to stay under the radar and avoid the immigration authorities. Finally, there is case law in the circuit, as you mentioned, about the failings of the internal workings of the household. We filed the 28J on Nunez, which is a case involving a petitioner and her mother, who moved from a residence. But there was an internal working agreement that the landlord was supposed to forward her mail. And this is the failure of the household there, in that the landlord did not forward the mail, and in fact, returned it as undeliverable, with a note that the petitioner doesn't live here. So that's why we believe that is an internal workings case. There's also the Ojeda Calderon case, which was a certified mail case from 2013, another published decision. The certified mail was actually signed for by someone named Dolores Ortiz. And it's not known how this person was related or not to the petitioner, Ojeda Calderon. But in that case, there was no affidavit submitted by Dolores Ortiz or anyone else to rebut the presumption of delivery. And in fact, of course, there was actual delivery by certified mail in that case. So those two published decisions, we believe, strongly support the government's position. I will note, I did find an unpublished decision, which I believe is directly on point. It's Rodriguez-Reyes from 2014. And in that case, it's another household failure case. And the presumption of delivery was not rebutted. I did not. Did you tell opposing counsel about it before you started arguing here today? I'm sorry, Your Honor, I've just located the case. But I mean, you didn't look at it while you're sitting here at the counsel table, did you? You located it before you came to court today, right? That's correct, Your Honor. And you didn't give it to opposing counsel when y'all were sitting in the courtroom together, you know, so that she would have ability to see it? I'm sorry, Your Honor, that was my fault. OK, well, then I will allow 28J in this case once you please provide a proper citation to opposing counsel. And if opposing counsel has something to say about the case, may do so in a 28J. It's very important that we inform each other of the cases that we're citing and talking about at oral argument. Of course, Your Honor, my sincere apologies. In that case, the presumption of delivery by regular mail was not rebutted. Just as here, the notice of hearing was not returned as undeliverable. And the petitioner lived at the address. And we argued just as here, the petitioner had no incentive to attend her hearing. And the petitioner in that case waited more than 12 years after being served with the notice to appear to inquire into her removal proceedings. And here, the delay is 11 years. Even about the notice, there's an issue about whether or not there was due diligence in the motion to reopen, that there's an underlying decision that the court said that there was not due diligence in the motion to reopen. It was too late, right? That's correct, Your Honor. I bring us back then to Penolva, where we said we don't have jurisdiction to decide where the court's made that decision on due diligence, and says that our sister circuits have also held that they don't have jurisdiction. Do you have a comment on that? Your Honor, I didn't want to get the argument sidestepped over jurisdiction, but we do have even sua sponte a duty to consider our proper jurisdiction in a case. Absolutely, Your Honor. I would be happy to submit a 28-J if the court would allow it. And the court and the opposing counsel may do as well. Do we have jurisdiction to consider whether the petitioner exercised due diligence or not in light of our Penolva v. Sessions 880-4F3-521? Thank you, Your Honor. This case, this court does lack jurisdiction to consider the due process concerns under Hernandez-Castillo, as Your Honor mentioned. The matter of MRA was closely followed in terms of the evidence submitted in addition to the affidavit. And in fact, there was none. The government notes the record of deportable alien, the I-215 in the record, says that at the time of her apprehension by the Border Patrol, Ms. Hernandez said that she was coming for economic reasons. So that information, of course, would have been used to rebut any asylum application that she may have filed. That's not before us, is it? I was just rebutting. The opposing counsel said that she intended to file an asylum application, and she was questioned on it. It's because she didn't. It goes to incentive to appear. It goes to her incentive to appear. And we argued that she had no incentive to appear. And as far as whether the household includes the public mailbox at the condominium, it appears that two of these speculative arguments that were mentioned in briefing, but not in petitioner's declaration, there is no evidence of this besides her attorney's arguments. It seems that two of the prospective scenarios on how the mail was misdirected were attributed to the postal service or the mail carrier. And then two of them were definitely household issues, we believe, whether another resident picked up the mail at the public mailboxes, or whether someone in her own household had thrown the mail away as junk mail. So we believe that the Nunez and Ojeda-Calderon cases do decide this case in the government's favor. Subject to the court's questions, that concludes the government's arguments. Thank you. We have your argument. Thank you, Your Honor. I just would like to note that I am concerned by opposing counsel's assertion that this is a failings-of-household type of case. I'm sure we're all familiar with dealing with the US Postal Service, things that you mail that never get delivered, the person never receives them, things that are returned, even though they were addressed correctly. And I see that there is this reliance on the US Postal Service here of just, again, it's not certified mail. It's not any type of delivery confirmation requested to be mailed back to the court. So just on putting that into the mailbox, to me, it's a leap to say that the person received it when you have this affidavit where the person says they did not receive it, and again, also that there were other incentives and reasons and indications of why the person would have had an interest in receiving it. And I'm concerned about expanding this into the court's holdings and failings of internal failings of a household to be extended to a large apartment complex, where, again, this mail could have easily been misdirected and received by someone who was not in the appellant's household itself. That was one of the main things I see here, is that those cases should not be expanded to cover a situation such as this, where there's a large apartment complex. Any details about the mailboxes or whatever that were not in the original affidavit of the client, I will say from the beginning, she said she lived in a condo, and also she provided the apartment number, the unit number, which indicates that from the beginning it was understood it was not a single family dwelling, that this was going into an apartment type situation. And I would rest on that unless there's anything further. Thank you very much. We have your argument. This case is submitted. The court will stand in recess for a brief recess before considering the remaining cases for the day. Thank you.